UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOFFMAN,

                Plaintiff,                CIVIL ACTION NO. 18-cv-11908

          v.                     DISTRICT JUDGE BERNARD A. FRIEDMAN

TERESA KIK,                MAGISTRATE JUDGE MONA K. MAJZOUB

                Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Robert Hoffman, proceeding *pro se*, initiated this prisoner civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Teresa Kik on June 6, 2018, alleging violations of his First and Fourteenth Amendment rights. (Docket no. 1.) This action is presently before the court on four motions: (1) Defendant's Motion to Dismiss (docket no. 10); (2) Plaintiff's Motion Seeking Leave to Amend His Complaint (docket no. 13); (3) Defendant's Motion to Dismiss Plaintiff's Amended Complaint (docket no. 17); and (4) Plaintiff's Motion Seeking Leave for a Second Amendment of Plaintiff's Complaint (docket nos. 20, 21). Plaintiff responded to Defendants' Motions to Dismiss (Docket nos. 16, 24). And Defendant filed an Objection to Plaintiff's Motion Seeking Leave for a Second Amendment, to which Plaintiff replied. (Docket nos. 23, 25). This action has been referred to the undersigned for all pretrial purposes. (Docket no. 15.) The undersigned has reviewed the pleadings, dispenses with oral argument on the Motions pursuant to Eastern District of Michigan Local Rule 7.1(f), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons that follow, it is recommended that  Defendant's Motion to Dismiss (docket no. 10) be **DENIED** as moot, Plaintiff's Motion Seeking Leave to Amend His Complaint (docket no. 13) be **GRANTED** as a matter of course, Defendant's Motion to Dismiss Plaintiff's Amended Complaint (docket no. 17) be **DENIED,** Plaintiff's Motion Seeking Leave for a Second Amendment of Plaintiff's Complaint (docket no. 20) be **GRANTED**, and Plaintiff's Second Amended Complaint be accepted as filed (docket no. 21).

## II.    REPORT

### A.     Plaintiff's Complaint

Plaintiff is currently incarcerated at the Parnall Correctional Facility in Jackson, Michigan; however, the events giving rise to the Complaint allegedly occurred between May and July 2017, while he was incarcerated at the G. Robert Cotton Correctional Facility also in Jackson, Michigan. (*See* docket no. 1 at 1-2.)  Plaintiff alleges that he turned in ten prisoner-to-prisoner mail forms (CSJ-100s) on May 25, 2017.  According to Plaintiff, Defendant called him in to her office on May 31, 2017, and asked him why he had turned in those forms.  When Plaintiff told Defendant that they were witnesses in a civil lawsuit, Defendant replied that Plaintiff was engaged in a fishing expedition and indicated that she was going to deny them.  Plaintiff told Defendant that she didn't have the authority to reject them because according to policy DOM 2017-4, she was required to turn them in to the Office of Legal Affairs.  Defendant then allegedly asked Plaintiff if he knew the transfer policy, and when he said "no," she said, "You better get familiar with it you'll be transferring soon, prisoners who quote policy to me get squashed like the bugs they are."

On June 22, 2017, Plaintiff allegedly went to Defendant's office to have an affidavit notarized and to send out a subpoena using certified/return receipt mail and legal mail.  Defendant

allegedly told Plaintiff that he could not send a certified letter without a court order, and Plaintiff replied that MDOC mail policy said that he could send as much certified mail as he wanted. Plaintiff alleges that Defendant responded to him by stating, "I told you not to quote policy to me, you better pack your property, I'm riding you out."  Defendant then signed the two legal mail forms as Plaintiff requested.  According to Plaintiff, Defendant sent an email to the facility's transfer coordinator regarding Plaintiff eight minutes later.

On July 9, 2017, a corrections officer told Plaintiff to pack his things because he was being transferred the next day.  Plaintiff asked Defendant about the reason for his transfer, and Defendant allegedly answered, "That's what happens when you quote policy to me."

Plaintiff claims that Defendant violated his First and Fourteenth Amendment rights to be free from retaliation while he was engaged in the protected conduct of accessing the courts, *i.e.*, locating witness and sending out legal mail.  He claims that as a result of Defendant's retaliatory actions, he lost his high-paying prison job, lost the help of his prisoner legal assistant, and was transferred away from his family in Jackson.  As relief, Plaintiff seeks compensatory damages in excess of $75,000, punitive damages, exemplary damages, and presumed damages, among other things.

### B.   Governing Law

#### 1.   Motion to Amend Standard

Federal Rule of Civil Procedure 15(a) provides that a "party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the

court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Factors relevant to the determination of whether to permit an amendment include "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).  The decision whether to grant a motion to amend is within the sound discretion of the court. *Id.*  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted).

### 2.    *Motion to Dismiss Standard*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  When deciding a motion under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002).  To survive a Rule 12(b)(6) motion, the complaint must contain direct or inferential allegations concerning all material elements of each claim and must allege sufficient facts to state a claim to relief that is plausible on its face. *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 3.    *Qualified Immunity Standard*

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That is, "'[t]he defense of qualified immunity protects officials from individual liability for monetary damages but not from declaratory or injunctive relief.'" *Top Flight Entertainment, Ltd. v. Schuette*, 729 F.3d 623, 635 n.2 (6th Cir. 2013) (quoting *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001)).

The Sixth Circuit has set forth a tri-part test to determine whether a defendant is entitled to qualified immunity: whether (1) "the facts viewed in the light most favorable to the plaintiff[] show that a constitutional violation has occurred;" (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). The court may, however, take up these considerations in any order. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

"A defendant who invokes the qualified immunity defense must present facts which, if true, would entitle him to immunity." *Noble v. Schmitt*, 87 F.3d 157, 161 (citing *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989)). If the defendant does so, "the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *See id.*; *see also*, *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d 967, 970 (6th Cir.2004)). "The [plaintiff] will defeat a qualified immunity defense if he can produce sufficient evidence after discovery to prove the existence of genuine issues of material fact regarding the issue of immunity." *Noble*, 87 F.3d at 161 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

### C.    Analysis

*1.    Defendant's First Motion to Dismiss and Plaintiff's First Motion to Amend*

Defendant moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, on October 5, 2018. (Docket no. 10.) The crux of Defendant's Motion is that Plaintiff failed to allege sufficient facts to show that the transfer resulted in the foreseeable, negative consequences necessary to cause it to rise to the level of an adverse action and that she is otherwise entitled to qualified immunity. On October 18, 2018, Plaintiff filed a Motion Seeking Leave to Amend His Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). (Docket no. 13.) In his Amended Complaint, Plaintiff attempts to cure the deficiency identified by Defendant in her Motion to Dismiss, by alleging that on May 31, 2017, after his conversation with Defendant was over, he went back to her office and begged her not to transfer him. He alleges that he explained to Defendant that his elderly mother lived in Jackson and was in poor health, and if he was transferred, he wouldn't get to see her at all. Plaintiff also alleges that he told Defendant that if he lost his job, he would not be able to afford to conduct depositions in an ongoing civil lawsuit regarding his left hand. Defendant allegedly responded, "[D]on't quote policy to me again[;] I don't like it." (*Id*. at 5.) Plaintiff also added an allegation that the transfer subjected him to harsher prison conditions. (*Id*. at 8.)

Plaintiff filed his Motion Seeking Leave to Amend His Complaint 13 days after Defendant filed her Motion to Dismiss, within the 21-day period set by Rule 15(a)(1)(B). As Defendant admits, Plaintiff's amendment is therefore available by right under the Rule. (*See* docket no. 17 at 7.) Accordingly, Plaintiff's Motion Seeking Leave to Amend His Complaint (docket no. 13) should be granted, and Defendant's Motion to Dismiss (docket no. 10) should be denied as moot.

2.      *Defendant's Second Motion to Dismiss and Plaintiff's Second Motion to Amend*

Perhaps in anticipation of the recommendation above, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint.  (Docket no. 17.)  In this Motion, Defendant maintains that she is entitled to qualified immunity because (1) the conduct in which Plaintiff was engaged – quoting policy to Defendant and disregarding her instruction not to do so – does not constitute the protected conduct necessary to state a claim for retaliation under clearly established law; and (2) Plaintiff's transfer does not constitute an adverse action under clearly established law.

Plaintiff responded to Defendant's Motion to Dismiss his Amended Complaint by filing a Motion Seeking Leave for a Second Amendment of Plaintiff's Complaint.[1]  (Docket nos. 20, 21.)  Plaintiff seeks this leave to (1) clarify facts concerning his protected conduct and characterize it as an oral grievance; (2) clarify facts regarding how the loss of his prison job hindered his ability to access the courts; and (3) drop two of the alleged adverse consequences of his transfer – his loss of the legal assistance of another prisoner and harsher prison conditions.  (*Id.* at 5.)  Plaintiff asserts that leave to file a Second Amended Complaint should be granted because he was not dilatory in filing the instant Motion, he notified opposing counsel of his intent to file the Motion, and he is not acting in bad faith, just trying to more clearly define his claims in response to the deficiencies alleged by Defendant.  (*Id.* at 7.)  Defendant objects to Plaintiff's Motion for Seeking Leave for a Second Amendment of Plaintiff's Complaint on the basis that the amendment would be futile for the reasons explained in her second Motion to Dismiss.  (Docket no. 23.)  The undersigned will now proceed to evaluate Plaintiff's proposed Second Amended Complaint for futility.

---

[1] Plaintiff has also filed a Response to Defendant's Motion to Dismiss his Amended Complaint, in which many of his arguments are based on the content of his Proposed Second Amended Complaint.  (Docket no. 24.)

Plaintiff claims that Defendant violated his First and Fourteenth Amendment rights to be free from retaliation.  (Docket no. 21.)  Prison officials may not retaliate against inmates who have engaged in constitutionally protected activities or conduct.  *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999).  A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *Id.* (citations omitted).

### a.     Protected Conduct

Plaintiff alleges that disputes arose between him and Defendant on May 31, 2017 and June 22, 2017, while he was engaged in the protected conduct of accessing the courts; specifically, while he was seeking approval of prisoner-to prisoner mail forms related to a civil lawsuit and attempting to have an affidavit notarized and send a subpoena via certified mail.  When Defendant challenged Plaintiff's requests, Plaintiff attempted to and did successfully resolve the disputes by quoting the relevant MDOC policy to Defendant.  However, Defendant allegedly did not like the fact that Plaintiff quoted policy to her, threatened to transfer Plaintiff if he didn't stop quoting policy, and eventually did initiate Plaintiff's transfer for continuing to quote policy.  (Docket no. 21.)

Defendant argues that quoting policy does not constitute protected conduct for purposes of a retaliation claim.  But for the first time in the proposed Second Amended Complaint, Plaintiff alleges that he quoted policy to Defendant in an effort to resolve their disputes through a verbal grievance.  Defendant does not address this new allegation in her objection to Plaintiff's Second Amended Complaint.

8

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). This is true whether the grievance is written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), *reh'g denied* (Apr. 19, 2018). Where prison policy, like that of the MDOC, requires that prisoners raise their grievances orally with staff before filing a formal, written grievance, "[i]t would be an unfair and illogical result for prisons to . . . be able to argue that a retaliation claim fails because the prisoner filed an oral, rather than written, complaint." *Id.* at 265-66. In other words, a prisoner "should not be punished for complying with prison policy, nor should prison officials be allowed to retaliate against [a prisoner] for making an oral grievance." *Id.* at 266.

Here, throughout the proposed Second Amended Complaint, Plaintiff maintains that he quoted MDOC policy to Defendant as part of a verbal grievance in order to resolve his and Defendant's disputes regarding his legal correspondence. Accordingly, Plaintiff has sufficiently pleaded that he was engaged in protected conduct.

b.    Adverse Action

An action "capable of deterring a person of ordinary firmness from exercising the constitutional right in question" is an adverse action. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citation, internal quotation marks, and emphasis omitted). A plaintiff need not show "actual deterrence;" "[e]ven the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct." *Id.* "[W]hile certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Thaddeus-X*, 175 F.3d at 398. "Whether a retaliatory action is sufficiently severe to

deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citations omitted). "[O]nly *de minimis* violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage." *Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) (citing *Bell, supra*).

"Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (citing *Smith v. Yarrow,* 78 F. App'x 529, 543-44 (6th Cir. 2003) (collecting cases)). An exception lies where the transfer would result in "foreseeable, negative consequences" to the prisoner. *Hill*, 630 F.3d at 474-75 (citations omitted).

Plaintiff alleges in the Second Amended Complaint that when Defendant first threatened to transfer him on May 31, 2017, he begged her not to transfer him and explained to her that if he was transferred, he would not be able to see his elderly, ailing mother and he would lose his job, so he would be unable to pay for and conduct the deposition of a non-party medical witness in an ongoing civil rights lawsuit regarding his left hand. (Docket no. 21 at 3.) According to Plaintiff, that deposition was his only means of discovering information from that witness. (*Id*. at 5.) Plaintiff alleges that Defendant's retaliatory transfer did indeed result in these "foreseeable, adverse consequences." (*Id*. at 6-7.) Specifically, Plaintiff alleges that he lost his high-paying job as a result of the transfer, which in turn hindered his ability to access the court because he could not pay for the deposition of the non-party medical witness. Plaintiff alleges that without the deposition, he was unable to sustain the subjective element of his non-frivolous Eighth Amendment claim and lost his case at the summary judgment stage. Plaintiff also alleges that he

was moved away from his mother who is unable to travel long distances due to the effects of her Alzheimer's disease.  (*Id*. at 7.)

There is conflicting Sixth Circuit case law regarding whether a transfer that makes it more difficult for a prisoner's family and friends to visit constitutes an adverse action.  Two recent unpublished Sixth Circuit opinions suggest that it does not.  In *Johnson v. Hoffner*, the Sixth Circuit held that transferring a prisoner to an "institution [that] was located farther away from those who visited him" did not rise to the level of an adverse action.  No. 17-2102, 2018 WL 4488737, at *3 (6th Cir. Apr. 20, 2018) (quoting *Friedman v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001)).  Similarly, in *Smith v. Weers*, the Sixth Circuit held that "a prison transfer does not constitute an adverse action simply because it makes it more difficult for friends and family to visit the prisoner."  No. 17-1504, 2018 WL 2087122, at *4 (6th Cir. Jan. 2, 2018).  But the Sixth Circuit previously held in *Pasley v. Conerly* that threats to move a prisoner to a location where his family would not be able to visit him could constitute an adverse action and that the prisoner's allegations of such threats met the low requirements for surviving dismissal.  345 F. App'x 981, 985-86 (6th Cir. 2009).  The Sixth Circuit later acknowledged and accepted the *Pasley* decision in *Hill v. Lappin*, *supra*, and characterized it as "holding that a threat to transfer the prisoner far away from the prisoner's family was an adverse action because it was foreseeable that his family would not be able to visit him."  630 F.3d at 475.

In light of this precedent, Plaintiff's claim of retaliatory transfer that resulted in the foreseeable consequence of being moved away from his mother might be sufficient to survive a motion to dismiss, but it cannot survive Defendant's Motion to Dismiss, as Defendant argues not only that Plaintiff's Complaint fails to state a claim upon which relief can be granted but also that she is entitled to qualified immunity.  Specifically, she argues that the alleged retaliatory transfer

did not violate a clearly established constitutional right of which a reasonable person would have known. "A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009). Because the authoritative case law on this issue is not conclusive, Plaintiff cannot "show that he had a clearly established right not to be transferred to a prison farther away from family and friends who visited him, or that such a transfer would constitute 'adverse action' for purposes of a retaliation claim." *Kitchen v. Heyns*, No. 14-12883, 2018 WL 5094073, at *4 (E.D. Mich. July 17, 2018), *report and recommendation adopted*, No. 14-12883, 2018 WL 4560915 (E.D. Mich. Sept. 24, 2018). Therefore, Defendant would be entitled to qualified immunity on this aspect of Plaintiff's retaliation claim, and Plaintiff's proposed Second Amended Complaint is futile in this regard.

The inquiry does not end here, however, as Plaintiff also alleges that he lost his high-paying job as a result of the transfer, which in turn hindered his ability to access the court because he could not pay for the deposition of a non-party witness in another civil rights action. A transfer that results in reasonably foreseeable consequences that inhibit a prisoner's ability to access the courts is an adverse action. *Siggers-El,* 412 F.3d at 701-02. The transfer in *Siggers-El* caused the prisoner to lose "his high paying job that he needed in order to pay his attorney" and "made it more difficult for his attorney to visit with or represent him because he was moved further away from her." *Id*. at 702. The court concluded that the retaliatory transfer constituted an adverse action because the consequences suffered by the prisoner were foreseeable and hindered his access to the courts.

Defendant argues that the consequences suffered by Plaintiff – the lack of funds to take a deposition – is not akin to a denial of access to the courts or the loss of an attorney.  (Docket no. 17 at 20.)  Defendant does not support this argument with any authority or analysis, and the undersigned declines to develop it on her behalf.  Defendant also argues that Plaintiff's assertion that the deposition was his only method for obtaining information from the non-party witness "does not seem to account for the subpoena power authorized in Rule 45 of the Federal Rules of Civil Procedure."  (Docket no. 23 at 3.)  The point of this argument is unclear.  To the extent that Defendant argues that Plaintiff could have sought documents from the non-party witness at a lesser cost, Plaintiff replies that he had already obtained all of his medical records.  (Docket no. 25 at 3.)  In any case, Rule 45 is the principal means for obtaining discovery, including depositions, from a non-party witness, and Plaintiff is required to pay for the discovery costs and witness fees associated therewith, even though he is incarcerated and proceeding *in forma pauperis*.  *See Kean v. Van Dyken*, No. 4:05-CV-64, 2006 WL 374502, at *3-4 (W.D. Mich. Feb. 16, 2006) (collecting cases).

Here, accepting Plaintiff's allegations in the proposed Second Amended Complaint as true, Plaintiff forewarned Defendant that if she transferred him, he would lose his job and be unable to pay for the deposition of a non-party medical witness in an ongoing civil rights action.  And like the prisoner-plaintiff in *Siggers-El*, Plaintiff was transferred and lost his high-paying job as a result, which in turn arguably hindered his access to the courts by rendering him unable to pay for and conduct the deposition of Dr. William Huettner in his then-pending non-frivolous civil rights case, *Hoffman v. Behler*, No. 17-316.  Plaintiff alleges that the deposition was the only available method of obtaining the information he needed from Dr. Huettner, and without that information, he was unable to sustain the subjective element of his Eighth Amendment claim, which led to a

grant of summary judgment in favor of the defendant(s).  Plaintiff has sufficiently alleged that his transfer resulted in foreseeable consequences that inhibited his ability to access the courts, and under the clearly established law in *Siggers-El*, he has therefore sufficiently alleged that he suffered an adverse action.

c.    <u>Motivating Factor</u>

"This element addresses whether [a defendant's] subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct."  *Hill*, 630 F.3d at 475 (citation omitted).  Evidence of retaliatory motive can include "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action."  *Id.* at 475-76 (citation omitted). Here, Plaintiff alleges that Defendant verbally threatened to transfer him for quoting policy and then, "a mere eight minutes" after Plaintiff quoted policy to her on June 22, 2017, Defendant sent an email to the correctional facility's transfer coordinator regarding Plaintiff, which email is attached as an exhibit to the Proposed Second Amended Complaint.  Defendant does not challenge Plaintiff's allegations concerning the motivation for her actions.  The undersigned finds that the temporal proximity pleaded by Plaintiff demonstrates a causal connection between his protected conduct and Defendant's allegedly adverse actions sufficient to survive a motion to dismiss.

Plaintiff's proposed Second Amended Complaint successfully pleads a claim of retaliatory transfer and is therefore not futile.  Additionally, the other relevant factors weigh in favor of permitting the proposed amendment.  For example, Plaintiff asserts that he received Defendants' second Motion to Dismiss on December 11, 2018, and he filed the instant Motion to Amend less than a week later.  Plaintiff also asserts that he notified defense counsel of his intent to file this Motion.  And through his two amendments, Plaintiff has seemingly been successful in curing the

14

prior deficiencies in his complaints alleged by Defendant.  Finally, Defendant does not argue that she would suffer any prejudice if the court were to allow the amendment, and the undersigned finds that any prejudice suffered by Defendant would be minimal.  Accordingly, Plaintiff's Second Amended Complaint should be permitted and accepted as filed at docket no. 21.

      **C.**    **Conclusion**

For the above-stated reasons, the court should **DENY** Defendant's Motion to Dismiss (docket no. 10) as moot, **GRANT** Plaintiff's Motion Seeking Leave to Amend His Complaint (docket no. 13) as a matter of course, **DENY** Defendant's Motion to Dismiss Plaintiff's Amended Complaint (docket no. 17), **GRANT** Plaintiff's Motion Seeking Leave for a Second Amendment of Plaintiff's Complaint (docket no. 20), and accept Plaintiff's Second Amended Complaint as filed (docket no. 21).

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  August 9, 2019                   s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE


<u>**PROOF OF SERVICE**</u>

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  August 9, 2019                   s/ Sandra Osorio
                                         Acting Case Manager